IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CYNTHIA BRAXTON, *

Plaintiff, *

v. * Civil Action No. RDB 06-1191

DOMINO'S PIZZA LLC, *

Defendant. *

* * * * * * * * * * * * *

MEMORANDUM OPINION

This employment discrimination case arises from a Complaint filed by Cynthia Braxton ("Plaintiff" or "Braxton") against Domino's Pizza LLC ("Defendant" or "Domino's Pizza"). The Complaint asserts ten causes of action, including numerous violations of 42 U.S.C. §§ 2000e, *et seq*. ("Title VII") and 42 U.S.C. § 1981, as well as breach of contract and tort claims based on the law of the State of Maryland. Currently pending before this Court is Defendant's Motion to Dismiss Counts IX and X of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Count IX asserts a cause of action for negligent supervision and Count X claims that Plaintiff's discharge violated Maryland public policy. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Defendant's Motion to Dismiss is GRANTED.

BACKGROUND

This Court considers the facts in the light most favorable to Plaintiff. From 1987-2005,

[1] Defendant's motion requested that this Court also dismiss Count VIII of the Complaint. However, Plaintiff voluntarily moved to dismiss Count VIII before responding to Defendant's motion. As a result, the only matter presently before this Court is whether Counts XI and X of the Complaint should also be dismissed.

Cynthia Braxton, who is African-American, was employed at the Domino's Pizza regional domestic distribution center in Anne Arundel County, Maryland. Plaintiff's initial job title was production shift leader, where her duties included scheduling workers, servicing stores, and ensuring the quality of dough and food service products. Starting in 1990, Braxton was promoted to a management position, where she was given additional responsibility for hiring and firing personnel and budgeting for the production department. The general manager of the distribution center was Brian Walker ("Walker"), and Plaintiff's immediate supervisor was Paul Watson ("Watson"). Both individuals are white males.

In early 2005, Braxton alleges that Watson began making sexual advances. In January or February 2005, Watson allegedly told Braxton that he was divorced and needed female companionship. (Compl. ¶ 16.) Watson apparently stated "that he dated Caucasian women, but would date African-American women who almost looked as if they were Caucasian," and indicated that Ms. Braxton fit his expectations in this regard. (*Id*.) Around the same time, Watson allegedly invited Braxton to a condominium that he recently purchased. (*Id*. at ¶ 17.) Fearful of losing her job, Braxton replied that "perhaps one day she would be able to stop by and see the condominium." (*Id*.) On March 17, 2005, Braxton and Watson were sent to North Carolina for an overnight inspection of a Domino's Pizza production facility. (*Id*. at ¶ 18.) After inspecting the facility, Watson allegedly told Braxton "to knock on his door at the hotel later that evening." (*Id*. at ¶ 19.) When Braxton responded that she had dinner plans, Watson told her "to come and knock on his door after dinner." (*Id*.) Braxton never stopped by. The next day, Watson demanded to know what happened. (*Id*. at ¶ 20.) Braxton replied that she had dinner with a friend and Watson reiterated that she "could have knocked on his door after dinner." (*Id*.)

After rebuffing his advances, Braxton contends that Watson systematically retaliated against her. For example, Braxton alleges that Watson began his retaliation by "selectively citing her and her team for any possible infraction, real or imagined, in the exercise of her duties and that of her team, particularly in the areas of production and sanitation." (Compl. ¶ 22.) Braxton also contends that Watson and Walker issued unsatisfactory reviews of Braxton's work as "retaliatory measure[s] designed to foment false justification for Ms. Braxton's termination." (*Id*. at ¶ 28.) Braxton contends that such conduct created a hostile and abusive working environment.

In early April 2005, Braxton terminated an employee named Tyrone Cornish ("Cornish") for falsifying documentation. On Saturday, April 23, 2005, Cornish telephoned Braxton at home "several times" and threatened her with bodily harm because she terminated his employment. (Compl. ¶ 38.) Braxton spoke with Watson about this incident, and alleges that Watson told her that he "would take care of it." (*Id*.) On Sunday, April 24, 2005, a Domino's Pizza security agent named John Menick ("Menick") telephoned Braxton and stated that he "would handle the situation and protect Ms. Braxton." (*Id*. at ¶ 39.) On Monday, April 25, 2005, Menick spoke with Cornish, who "at first denied making the threatening calls, but then stated that he would leave Ms. Braxton alone." (*Id*.) Menick told Braxton that he spoke with Walker, who allegedly stated that he "would make sure that Ms. Braxton got safely to and from her car." (*Id*.) Braxton requested that Walker inform everyone at the distribution center about Cornish's threats, and Walker did so. (*Id*. at ¶ 40.) Braxton alleges that, despite asking her to work late that day, Walker failed "to check to determine if Ms. Braxton needed assistance or protection getting to her car." (*Id*.) Eventually, Braxton prevailed upon another employee to walk her to her car.

(*Id*.)

Braxton repeatedly complained about the conduct of Watson and Walker. On April 20, 2005, Braxton alleges that she filed an oral charge of harassment and discriminatory treatment against Watson and Walker with Susan Trevillian ("Trevillian"), a Domino's Pizza human resources representative. On April 21, 2005, Braxton contends that she telephoned the Domino's Pizza hotline for employees requiring emergency assistance, and received counseling in connection with the conduct of Watson and Walker. On April 26, 2005, Braxton claims that she met with Trevillian to complain about Walker's failure to provide her with security during the previous evening.

Braxton emphasizes that she "experience[d] severe anxiety, mental anguish, stress and fear because of Mr. Cornish's threats against her" and was "particularly concerned that Mr. Cornish might have learned where she lived." (Compl. ¶ 44.) On April 26, 2005, after her meeting with Trevellian, Braxton alleges that she contacted a Domino's Pizza security agent named George Ralph ("Ralph"), who told Braxton and Trevellian "to make sure that someone walked Ms. Braxton to her car, and for Ms. Braxton to be very careful about her personal safety." (*Id*. at ¶ 42.) Ralph requested that Braxton's cell phone records be located and reviewed. (*Id*.) Later that same day, Braxton alleges that she contacted the Baltimore County Police Department. (*Id*. at ¶ 44.) The police officer who took the complaint instructed Braxton that "if Mr. Cornish telephoned her again, to obtain a restraining order for telephone misuse." (*Id*.)

On April 28, 2005, Braxton's employment was terminated in a meeting with Watson, Walker, and Trevillian. Walker allegedly explained that Braxton was being terminated because

her performance "had not gotton any better. . . ." (Compl. ¶ 46.) Braxton, who is African-American, contends that she was replaced by a Caucasian male. In May 2005, Braxton filed a claim for unemployment benefits with the Maryland Department of Labor, Licensing and Regulation, Division of Unemployment Insurance (the "Department"). A telephonic hearing with respect to Braxton's claim was scheduled for May 6, 2005. According to Braxton, that hearing never occurred because Domino's Pizza informed the Department that Braxton was terminated "through no fault of her own." (*Id*. at ¶ 50.)

In July 2005, Braxton filed a claim with the United States Equal Employment Opportunity Commission (the "EEOC"). On February 28, 2006, Braxton received a right-to-sue letter from the EEOC. On May 11, 2006, Plaintiff filed a ten-count Complaint in this Court. On June 7, 2006, Defendant filed its Motion to Dismiss Counts VIII, IX, and X of the Complaint. On June 26, 2006, this Court approved Plaintiff's voluntary dismissal of Count VIII.

STANDARD OF REVIEW

Defendant seeks to dismiss certain causes of action asserted by Plaintiff pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)). The "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also*

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). Therefore, a Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325 (4th Cir. 2001); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

DISCUSSION

**I. Plaintiff's Complaint.**

Plaintiff's Complaint seeks declaratory judgments and approximately $30,000,000 in damages in connection with the following claims:

| Count | Causes of Action |
|---|---|
| I | Sexual Harassment (Title VII): Plaintiff contends that Defendant's actions constitute sexual harassment in violation of Title VII. (Compl. ¶¶ 52-56.) |
| II | Hostile Work Environment (Title VII): Plaintiff asserts that Defendant's actions constitute a hostile work environment based on sex and/or race in violation of Title VII. (*Id*. at ¶¶ 57-61.) |
| III | Retaliation (Title VII): Plaintiff claims that she was retaliated against for engaging in protected activity in violation of Title VII. (*Id*. at ¶¶ 62-71.) |
| IV | Racial Discrimination (Title VII): Plaintiff contends that Defendant's actions constitute unlawful discrimination on the basis of race in violation of Title VII. (Compl. ¶¶ 72-76.) |
| V | Racial Discrimination (§ 1981; Civil Rights Act): Plaintiff asserts that Defendant's actions constitute unlawful discrimination on the basis of race in violation of § 1981 and the Civil Rights Act of 1991. (Compl. ¶¶ 77-85.) |
| VI | Breach of Contract: Plaintiff alleges that Defendant's conduct violates numerous employment agreements. (*Id*. at ¶¶ 86-88.) |
| VII | Intentional Infliction of Emotional Distress: Plaintiff contends that Defendant's conduct constitutes intentional infliction of emotional distress. (*Id*. at ¶¶ 89-93.) |
| VIII | Maryland Code § 49B: Plaintiff asserts that Defendant's conduct constitutes unlawful discrimination in violation of Maryland Code § 49B. (*Id*. at ¶¶ 94-98.) |

| Count | Causes of Action |
|---|---|
| IX | Negligent Supervision: Plaintiff alleges that Defendant breached its duty under the law to supervise its agents to ensure that they did not discriminate, retaliate against, sexually harass, or wrongfully terminate employees. (*Id*. at ¶¶ 99-104.) |
| X | Discharge in Violation of Public Policy: Plaintiff contends that she was terminated from her employment in violation of clear mandates of public policy. (*Id*. at ¶¶ 105-110.) |

As noted above, Plaintiff voluntarily dismissed Count VIII of the Complaint. As a result, the subject motion seeks the dismissal of Counts IX and X.

As this Court exercises its supplemental jurisdiction over these causes of action arising under the laws of the state of Maryland, pursuant to 28 U.S.C. § 1367, principles of the substantive law of the state of Maryland apply. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). As this Court has previously noted, "[i]n exercising its power over supplemental state claims, the Court applies the substantive laws of the forum state, Maryland." *Mayers v. Wash. Adventist Hosp*., 131 F. Supp. 2d 743, 751 (D. Md. 2001) (citing *Erie R.R. Co.*, 304 U.S. at 78); *see Bryant v. Better Bus. Bureau of Greater Maryland*, 923 F. Supp. 720, 727 n.1 (D. Md. 1996) (citing *Erie R.R. Co.*, 304 U.S. at 78).

## II. Negligent Supervision (Count IX).

In Count IX of the Complaint, Plaintiff alleges that Domino's Pizza negligently failed to train and supervise its employees to ensure that they did not violate other employees' civil rights:

> Defendant's employees, as alleged herein, recklessly, negligently, openly, systematically and/or intentionally violated Ms. Braxton's civil rights, as well as Domino's own internal policies and procedures and/or contracts of employment and/or employment agreement(s), as applicable to Ms. Braxton, regarding discrimination, harassment, sexual harassment, retaliation and/or other abusive, illegal acts of discrimination.

(Compl. ¶ 101.) Defendant moves to dismiss Count IX on grounds that it improperly duplicates

Plaintiff's causes of action under Title VII.

Although the tort of negligent supervision is infrequently discussed in decisions published by Maryland state courts, this Court has described the elements of such a claim as follows:

> In order to prove a cause of action for either negligent hiring, supervision or retention, the Plaintiff must establish that her injury was caused by the tortious conduct of a coworker, that the employer knew or should have known by the exercise of diligence and reasonable care that the coworker was capable of inflicting harm of some type, that the employer failed to use proper care in selecting, supervising or retaining that employee, and that the employer's breach of its duty was the proximate cause of the Plaintiff's injuries.

*Bryant v. Better Bus. Bureau of Greater Maryland*, 923 F. Supp. 720, 751 (D. Md. 1996) (citing *Evans v. Morsell*, 395 A.2d 480, 483 (Md. 1978); *Norfolk & W. R. Co. v. Hoover*, 29 A. 994, 995 (Md. 1894); *McCall's Ferry Power Co. v. Price*, 69 A. 832, 834 (Md. 1908)). This Court has noted that negligent supervision claims "existed at common law" in Maryland and therefore "may only be predicated on common law causes of action." *Demby v. Preston Trucking Co., Inc.*, 961 F. Supp. 873, 881-82 (D. Md. 1997) (dismissing negligent supervision claim based on Title VII).[2]

In this case, Plaintiff contends that three out of her four claims for negligent supervision should survive Defendant's motion to dismiss. Specifically, after acknowledging that her Title

---

[2] *See also Crosten v. Kamouf*, 932 F. Supp. 676, 684 (D. Md. 1996) (dismissing negligent supervision claim based on Title VII); *Perry v. FTData, Inc.*, 198 F. Supp. 2d 699, 708 (D. Md. 2002) (same); *Bryant*, 923 F. Supp. at 751 (dismissing negligent supervision claim based on Title VII and the American Disabilities Act); *accord McLean v. Patten Communities, Inc.*, 332 F.3d 714, 719 (4th Cir. 2003) (dismissing negligent supervision claim because "neither harassment or retaliation [are] common law torts in North Carolina").

VII-based claim should be dismissed,[3] Plaintiff asserts that the following claims should survive: negligent supervision based on (1) intentional discrimination in violation of 42 U.S.C. § 1981, (2) the tort of retaliatory/wrongful discharge in violation of public policy under Maryland law, and (3) the tort of intentional infliction of emotional distress under Maryland law. (*See* Pl.'s Opp. pp. 4-6.) These claims are addressed in turn below.

First, this Court concludes that Plaintiff's attempt to support her negligent supervision claim by relying on 42 U.S.C. § 1981 fails as a matter of law. This Court has previously noted that claims for negligent supervision "may only be predicated on common law causes of action." *Demby*, 961 F. Supp. at 882. Claims under § 1981, however, are not actionable at common law. In addition, there is no common law tort for discrimination on the basis of race in Maryland. *See, e.g.*, *Montrose Christian School Corp. v. Walsh*, 770 A.2d 111, 121 (Md. 2001) ("Except for wrongful or abusive discharge actions pursuant to *Adler v. American Standard Corp.*, 432 A.2d 464 (Md. 1981), actions for damages based on the termination of employment relationships, including those regulated by statutes, ordinarily sound in contract and not in tort.") (citations omitted).[4]

Although difficult to discern, Plaintiff appears to argue that the doctrine of *respondeat*

---

[3] (*See* Pl.'s Opp. p. 4 n.2 ("Plaintiff does not oppose Defendant's Motion regarding negligent supervision claims under Title VII.").)

[4] *See also Watson v. Peoples Ins. Co*, 588 A.2d 760, 767 (Md. 1991) (noting that the defendant would not be liable for a wrongful discharge claim based upon a claim for a sexually hostile work environment because such a claim is actionable under Title VII); *Childers v. Chesapeake and Potomac Telephone Co.*, 881 F.2d 1259, 1265 (4th Cir. 1989) ("Maryland law explicitly prohibits employment discrimination based on physical or mental handicap; it does not, however, create a private right of action in tort.") (citing *Soley v. Maryland Comm'n on Human Relations*, 356 A.2d 254 (Md. 1976); *Dillon v. Great Atlantic & Pacific Tea Co.*, 403 A.2d 406 (Md. Ct. Spec. App. 1979)).

*superior* allows her to predicate a claim for negligent supervision upon alleged violations of 42 U.S.C. § 1981.[5] In making this argument, Plaintiff relies on dicta in *Gennell v. Denny's Corp.*, 378 F. Supp. 2d 551 (D. Md. 2005), where this Court rejected the plaintiff's claim for negligent supervision:

> The court assumes, though Plaintiff is never explicit on this point, that the legal duty breached is that of affording customers an experience that does not include intentional racial discrimination in violation of § 1981; but while "[i]t is well-established that an employer may be liable under *respondeat superior* theory for its employees' violations of § 1981," *Williams v. Cloverland Farms Dairy, Inc.*, 78 F. Supp. 2d 479, 485 (D. Md. 1999) (citing cases), Plaintiff has failed to show any breach of that duty because Plaintiff cannot show that Defendant intentionally discriminated against her. Therefore summary judgment is appropriate on [Plaintiff's cause of action for negligent supervision].

*Id*. at 560 (citing *Bryant*, 923 F. Supp. at 751). Although the above language might suggest that a claim for negligent supervision could be based on the doctrine of *respondeat superior* and violations of § 1981, that precise question was simply not addressed by this Court. In *Williams v. Cloverland Farms Dairy, Inc.*, 78 F. Supp. 2d 479 (D. Md. 1999), this Court considered the relation between § 1981 and the tort of negligent supervision:

> Cloverland does not challenge the sufficiency of Williams' claim, but rather argues that she has failed to state a claim, as a matter of law, because her assertion is based on a violation of 42 U.S.C. § 1981. In support of its position, Cloverland cites *Bryant*, *supra*, for the proposition that courts may not impose liability on an employer for failing to prevent a harm that was not a cognizable injury under the common law. Because race discrimination in violation of § 1981 would not be a common law tort, Cloverland argues, the Court may not hold it liable in this case. The Court disagrees. Williams'

[5] (*See* Pl.'s Opp. p. 5 ("Ms. Braxton, then, has alleged well-pled causes of action under *respondeat superior* with regard to intentional torts, proximately caused by negligent supervision, committed by Defendant's employees, under both federal and state law.").)

> Complaint stated all the necessary elements for a claim of negligent hiring and training, including injury by Daugherty's tortious conduct. Assuming *arguendo* that *Bryant* applies here, it would not alter the outcome because the tortious acts alleged in Williams' Complaint would have been cognizable injuries under the common law, *e.g.*, infliction of emotional distress or torts arising from business or contractual relationships.

*Id*. at 484. Although not directly on point, the above language suggests that a negligent supervision claim cannot be predicated on violations of § 1981.

After considering these arguments, this Court rejects Plaintiff's attempt to support her claim for negligent supervision with the combined doctrines of *respondeat superior* and 42 U.S.C. § 1983. First, as already noted, there is no common law tort for discrimination on the basis of race and claims under § 1981 are not actionable at common law. Second, negligent supervision and *respondeat superior* are alternative theories for imposing liability upon an employer for the torts of his employees.[6] It is inappropriate to combine these common law doctrines for purposes of transforming violations of 42 U.S.C. § 1981 into common law torts. As a result, this Court concludes that Plaintiff's negligent supervision claim cannot be predicated upon a race discrimination claim under 42 U.S.C. § 1981. *Bryant*, 923 F. Supp. at 751; *Crosten*, 932 F. Supp. at 684; *Cloverland Farms*, 78 F. Supp. 2d at 484.

Second, for reasons explained below, Plaintiff's claim for wrongful discharge fails to state a claim upon which relief can be granted. *See* Discussion *infra* § III. It follows that Plaintiff's negligence supervision claim cannot be predicated upon her cause of action for

---

[6] *Cf. Henley v. Prince George's County*, 479 A.2d 1375, 1381 (Md. Ct. Spec. App. 1984) ("An employer may be held responsible for the torts of his employee under three *distinct* theories: *respondeat superior*, negligent entrustment, and negligent hiring.") (emphasis added; citation omitted), *rev'd on other grounds*, 503 A.2d 1333 (Md. 1984).

wrongful discharge. *Cf. Keziah v. W.M. Brown & Son, Inc.*, 888 F.2d 322, 327 (4th Cir. 1989) (dismissing claim for negligent supervision where summary judgment was properly granted with respect to the underlying cause of action in tort) (applying North Carolina law).

Finally, Plaintiff relies on her claim for intentional infliction of emotional distress to support her cause of action for negligent supervision. Defendant does not argue that this approach fails as a matter of law.[7] Instead, Defendant points out that Count IX of the Complaint "does not mention intentional infliction of emotional distress." (*See* Def.'s Reply p. 3; Compl. ¶¶ 99-104.) Although Defendant is correct on this matter, Plaintiff is entitled to amend her Complaint at this early stage in this litigation.[8] Accordingly, Defendant's Motion to Dismiss Count IX of the Complaint is GRANTED without prejudice to Plaintiff's attempting to restate her cause of action in Count IX to reflect that it is based on a claim for intentional infliction of emotional distress.

**III. Wrongful Discharge (Count X).**

In Count X of the Complaint, Plaintiff contends that she was wrongfully discharged in violation of Maryland public policy:

---

[7] *Cf. Keziah*, 888 F.2d at 327 ("The allegations of Keziah's complaint demonstrate that she seeks to prove the intentional infliction of emotional distress claim as the tortious conduct underlying her negligent supervision claim. Because summary judgment was properly granted on her emotional distress claim, however, the negligent supervision claim must also fail.") (applying North Carolina law).

[8] *See* Fed. R. Civ. P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served."); *see also Smith v. Blackledge*, 451 F.2d 1201, 1203 n. 2 (4th Cir. 1971) (motion to dismiss is not a responsive pleading for purposes of Rule 15(a)).

> Under applicable state and federal law, it is a clear mandate of public policy that discrimination on the basis of sex and race, sexual harassment, retaliation, and maintaining and/or allowing a sexually hostile work environment is absolutely prohibited, as is the illegal, wrongful termination of an employee, like Ms. Braxton, who engages in legitimate protected activity by filing claims and charges complaining of such actions and behavior.[9]

(Compl. ¶ 106.) Defendant requests that this Court dismiss Count X on grounds that Maryland law does not recognize wrongful discharge claims based upon the violation of public policies encapsulated in federal civil rights and state anti-discrimination statutes.

In Maryland, "an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time." *Adler v. American Standard Corp.*, 432 A.2d 464, 467 (Md. 1981); *Page v. Carolina Coach Co.*, 667 F.2d 1156, 1158 (4th Cir. 1982) (applying Maryland law). Maryland law recognizes a common law exception to the at-will doctrine "when the motivation for the discharge contravenes some clear mandate of public policy." *Adler,* 432 A.2d at 473. To sustain a claim for wrongful discharge, the employee must show that (1) he was discharged; (2) the basis for his discharge violates some clear mandate of public policy; and (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee. *See Wholey v. Sears Roebuck & Co.*, 803 A.2d 482, 489 (Md. 2002). Whether public policy considerations constitute a clear mandate of public policy is a question of law. *Id*. at 487 (citations omitted).

---

[9] Plaintiff notes in a footnote that "[b]y advancing these arguments on this issue, Ms. Braxton does not concede that she is an at-will employee . . . ." (Pl's Opp. p. 7 n.3); *cf. Ewing v. Koppers Co. Inc.*, 537 A.2d 1173, 1174 (Md. 1988) ("We hold that a cause of action for abusive discharge exists in favor of employees who serve under contract as well as those who serve at will.").

After reviewing the papers submitted by the parties, this Court finds that Plaintiff's claim for wrongful discharge fails as a matter of law. As an initial matter, Plaintiff failed to meet the threshold requirement of "plead[ing] with particularity the source of the public policy" allegedly violated by his termination. *Porterfield v. Mascari II, Inc.*, 788 A.2d 242, 245 (Md. Ct. Spec. App. 2002), *aff'd*, 823 A.2d 590 (Md. 2003). Without amending her Complaint, Plaintiff attempts to cure this problem in her opposition papers by asserting that:

> The public policy implicated in this regard is the right of an employee to be safe from threats and/or actions of bodily harm or death, when such employee, like Ms. Braxton, fired a Domino's employee, who then threatened her with bodily harm and/or death.

(Pl.'s Opp. p. 7 (citing Compl. ¶¶ 38-46).) Plaintiff argues that this public policy was implicated when "Mr. Walker retaliat[ed] against Ms. Braxton for filing a complaint [that Mr. Walker was failing to adequately address or entertain her concerns regarding her bodily safety.]" (Pl.'s Opp. p. 8.) In the alternative, Plaintiff contends that she was wrongfully discharged "because she refused to acquiesce in a form of *quid pro quo* sexual harassment that would have amounted to an act of prostitution. . . ." (*Id*. (citing *Insignia Residential Corp. v. Aston*, 755 A.2d 1080, 1081-87 (Md. 2000).)

Plaintiff's claim that she was wrongfully discharged for complaining that her supervisor did not adequately address her safety concerns does not fit neatly into the relevant caselaw. This claim has attributes that resemble the claim considered in *Watson v. Peoples Ins. Co*, 588 A.2d 760, 767 (Md. 1991), where the plaintiff asserted that she was terminated in retaliation for seeking legal redress against a co-worker because of sexual harassment that included assault and battery. *Id*. at 767 (recognizing that "the individual's interest in preserving bodily integrity" is

sufficiently clear and strong that, under certain circumstances, an employee's discharge that violates that policy is actionable). Plaintiff's wrongful discharge claim also resembles claims analyzed in *Wholey v. Sears*, 803 A.2d 482 (Md. 2002), where the plaintiff asserted that he was discharged for reporting suspected criminal activity in the workplace to co-employees. *Id*. at 496 (stating that "[t]o qualify for the public policy exception to at-will employment, the employee must report the suspected criminal activity to the appropriate law enforcement or judicial officer, not merely investigate suspected wrong-doing and discuss that investigation with co-employees or supervisors.") (citation omitted).

After considering Plaintiff's revised wrongful discharge claim in light of the *Watson* and *Wholey* decisions, this Court concludes that it fails as a matter of law. First, unlike the claim considered in *Watson*, the threats at issue in this case were not "part of a pattern of sexual harassment by [the supervisor] both at the workplace and elsewhere." *Watson*, 588 A.2d at 767. Second, unlike the claims considered in *Wholey*, the alleged wrongdoing in this case—that Plaintiff's supervisor did not take sufficient steps to protect her safety—was not of a criminal nature and, even if it was, Plaintiff did not report that wrongdoing to the appropriate law enforcement or judicial officials.[10] *See Wholey*, 803 A.2d at 496. Finally, to allow Plaintiff's claim to proceed under these circumstances would undermine the Court of Appeals' directive that wrongful discharge actions should be entertained "*only with the utmost circumspection*."

---

[10] Plaintiff did contact the Baltimore County Police Department. However, Plaintiff initiated this communication for purposes of discussing Cornish's threats, not Walker's alleged failure to secure Plaintiff's safety on the evening of April 25, 2005.

*Adler*, 432 A.2d at 472 (emphasis in original; citation and internal quotation marks omitted).[11]

Second, Plaintiff's contention that she "was wrongfully discharged because she refused to acquiesce in a form of *quid pro quo* sexual harassment that would have amounted to an act of prostitution. . . ." is not supported by the Complaint. (Pl.'s Opp. p. 8; *see also* Compl. ¶¶ 105-110.) *Quid pro quo* sexual harassment occurs "where sexual consideration is demanded in exchange for job benefits." *Spencer v. General Electric Co.*, 894 F.2d 651, 658 and n. 5 (4th Cir. 1990) (citation omitted), *overruled on other grounds*, *Farrar v. Hobby*, 506 U.S. 103 (1992). In this case, the Complaint does not allege a single instance of *quid pro quo* sexual harassment. As a result, this case does not "come within the ambit" of *Insignia Residential Corp. v. Ashton*, 755 A.2d 1080 (Md. 2000) and *Perry v. FTData, Inc.*, 198 F. Supp. 2d 699 (D. Md. 2002), both of which involve straightforward and numerous examples of *quid pro quo* harassment. *See*, *e.g.*, *Insignia*, 755 A.2d at 1082 ("He added that, if she slept with him, 'he could help me out' and that she 'could go places.'"); *Perry*, 198 F. Supp. 2d at 703 ("McLallen told her that all she needed to do was to 'make [him] happy' and that he would promote her if she would do what was asked of her.").

In sum, Plaintiff's revised causes of action for wrongful discharge fail to state a claim upon which relief can be granted. Plaintiff's contention that she was improperly terminated for complaining that her supervisor failed to adequately address security concerns in connection with the conduct of a former employee does not jeopardize a clear mandate of public policy.

---

[11] In general, Maryland courts have emphasized that wrongful discharge claims cannot be maintained to vindicate wholly abstract policies such as "the right of redress." *Watson*, 588 A.2d at 765. An employer of a discontented at-will employee cannot be required to face the choice between retaining the employee or risking an abusive discharge suit. *Id*.

Plaintiff's alternative argument—that she was wrongfully discharged because she refused to acquiesce to *quid pro quo* sexual harassment—is not supported by any allegations in the Complaint. Accordingly, Defendant's Motion to Dismiss Count X is GRANTED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Counts IX and X is GRANTED. A separate Order follows.

Dated: December 21, 2006

/s/
Richard D. Bennett
United States District Judge